AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

### DISTRICT OF  Massachusetts

UNITED STATES OF AMERICA

### V.

DONOVAN SORRELL

**CRIMINAL COMPLAINT**

CASE NUMBER:  *MJ04-m-281 JLA*

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my

knowledge and belief.  On or about _____ November 23, 2004 _____ in _____ Suffolk _____ county, in the

_____ District of _____ Massachusetts _____ defendant(s) did, (Track Statutory Language of Offense)

knowingly and intentionally possess cocaine, a Schedule II controlled substance, with intent to distribute,

in violation of Title_____ 21 _____ United States Code, Section(s) _____ 841(a)(1) _____ .

I further state that I am a(n)_____ Special Agent with ICE _____ and that this complaint is based on the following
Official Title

facts:

See Affidavit of Special Agent Peter Darling attached hereto and incorporated by reference herein.

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

11-24-2004
_____
Date

at _____ Boston, Massachusetts _____
City and State

Joyce London Alexander
Magistrate Judge
_____
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

### Affidavit of Peter Darling

I, Peter Darling, on oath depose and state that:

1.    I am a Special Agent with the Department of Homeland Security, Customs and Immigration Enforcement ("ICE"), formerly known as the United States Customs Service, and I have been so employed for approximately six years.  Since November 2003, I have been assigned to ICE's field office in Boston.  Prior to that, I was assigned to ICE's field office in Chicago, Illinois for approximately five years.  I have received specialized training from ICE in the importation, transportation, and distribution of controlled substances.  During the course of my career, I have been involved in numerous narcotics investigations and cases involving a number of investigative techniques, including the debriefing and use of confidential informants, controlled purchases of drugs, electronic surveillance, and physical surveillance.

2.    I am submitting this affidavit in support of a criminal complaint against **DONOVAN SORRELL ("SORRELL")** for possession of cocaine, a Schedule II controlled substance, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). This affidavit also is submitted in support of a criminal complaint against **NUEREL CARR ("CARR") A.K.A. FREDERICK D. BROWN and A.K.A. "COX"**, and **MICHAEL MCDONALD ("MCDONALD")** for possession of cocaine, a Schedule II controlled substance, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  As set forth more fully

below, the quantity of cocaine involved in these offenses is over five hundred grams. Accordingly, the five-year minimum mandatory provision contained in 21 U.S.C. § 841(b)(1)(B) is applicable. Since I am submitting this affidavit for the limited purpose of establishing probable cause, I have not set forth each and every fact known to me concerning this investigation.

### Origin of the Investigation

3.    On November 23, 2004, **SORRELL**, a Jamaican national, entered the United States on Jamaican Airlines flight 49 which originated in Jamaica. Flight 49 arrived at Boston's Logan International Airport at approximately 10:30 p.m. Customs and Border Protection agents conducted intensive inspections and directed approximately 90% of the passengers from Jamaican Airlines flight 49 to the agricultural inspection area to have their luggage x-rayed. An x-ray of Sorrell's luggage revealed three bottles, two of which appeared to contain solid objects. Sorrell was brought to a table where he identified the luggage as his property. The two bottles which appeared to contain solid objects were removed from the bag. One was a rum bottle, the other was a "Nonnie Juice" bottle. The two bottles were x-rayed again. The solid objects inside each bottle were visible in the x-ray.

4.    The two bottles containing what appeared to be solid objects were taken to another area where a probe was

2

inserted into each bottle.  The probe revealed that there was a
solid object inside each bottle.  A sample of the contents of
each solid object was extracted and field tested for the presence
of narcotics.  The field tests on the contents of the solid
objects in each bottle revealed the presence of cocaine.

5.    Sorrell was advised of his Miranda warnings and agreed
to cooperate with law enforcement.  He stated that on two
occasions in September and October 2004 he brought cocaine from
Jamaica to Boston through Logan International Airport.  On both
earlier trips the cocaine was concealed inside bottles of rum.
Sorrell stated that he transported the cocaine for "Winston" LNU.
Sorrell knows Winston through a man he knows in Jamaica as
"Bones."  Sorrell was paid $4,000 in U.S. currency for the first
delivery and $5,000 in U.S. currency for the second delivery.  He
was to be paid $5,000 for this delivery.  He stated that on the
two previous trips he had been instructed that after arriving in
Boston to rent a room at the Best Western Hotel in Quincy,
Massachusetts and to then call "Bones" in Jamaica to inform him
that he arrived and to provide his hotel room number.  Sorrell
had been informed that an individual name "Cox" would pick up the
cocaine at the Best Western.  On both prior trips, a tall black
male, with a facial scar, came to his hotel room to pick up the
bottles containing the cocaine.  "Cox" paid Sorrell for
transporting the cocaine. On one occasion Sorrell was paid at the

time the cocaine was picked up, on the other occasion he was paid by "Cox" three days later.  Sorrell stayed in Boston for about five days before returning to Jamaica on both previous occasions.

6.    On November 24, 2004, a controlled delivery of the cocaine recovered from Sorrell's luggage was conducted at the Best Western Hotel in Quincy.  Sorrell agreed to go with federal agents to the Best Western Hotel in Quincy and contact "Bones." With federal agents present, Sorrell called "Bones" in Jamaica and told him that everything was OK, that he had been delayed getting into his room because his flight was late, and that he was in room 109.  A short time later Sorrell received a call on his hotel room phone from Winston, who asked Sorrell why there was a delay getting into the room.  Sorrell told Winston that the flight had been delayed and he could not get into his room, but that everything was OK.

7.    At approximately 9:30 a.m., a male matching Cox's description and another male arrived at the Best Western Hotel in a 2000 Nissan Pathfinder registered to Michael **McDonald** of 62 Constitution Road, Mattapan, Massachusetts. The driver was later identified as McDonald. COX was later identified as **Carr**. McDonald parked the vehicle and Carr exited and walked to room 109.  Federal agents were posted outside the hotel and in the room next door to room 109. Carr entered the room, spoke with Sorrell, and left with the two bottles containing the cocaine.

4

The conversation between Sorrell and Carr was recorded.

8.    After exiting the hotel room with the two bottles containing the cocaine, Carr was immediately arrested by federal agents.  Federal agents then arrested McDonald, who had remained in the Nissan parked outside the Best Western. Carr and McDonald were advised of their Miranda warnings, and each provided a statement to federal agents.

9.    McDonald told federal agents that earlier that day (November 24, 2004) he received a telephone call from "Cox." McDonald explained that "Cox" was his supplier of cocaine.   "Cox" asked McDonald to drive him to the hotel to pick up bottles of rum.  McDonald told federal authorities that he knew that "Cox" was referring to cocaine when he used the word rum.

10.  Carr initially told federal agents that he was Frederick Brown (the name on his New Jersey drivers license)and that he was at the hotel to pick up three bottles of rum for Rory.  He later said the he was there to pick up the rum for Winston, who he said was in Jamaica. He admitted that he had made two prior pick ups from Sorrell and that he had paid Sorrell $16,000 for the second delivery.  When asked by federal agents if he knew he was picking up drugs, Carr responded that it was not his money.  He said that the money had been given to him by Winston to give to Sorrell.  He told federal agents that he had previously been arrested on cocaine charges and that he had never

gone back to court.  He then told federal agents that his true
name was Carr.  Car was asked what he was supposed to do with the
bottles of rum.  He stated that someone was coming to his house
to pick them up.  When asked who, he responded Winston.  He
claimed to have no way to contact them.  He then identified them
as Winston.


_____
PETER DARLING
Special Agent
ICE


Sworn to and subscribed before me on this 24th day of
November, 2004.


_____
JOYCE LONDON ALEXANDER
United States Magistrate Judge

6

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

**Place of Offense:** _____  **Category No.** __II_____  **Investigating Agency** __ICE_____

**City** __Boston_____          **Related Case Information:**

**County** __Suffolk_____      Superseding Ind./ Inf. _____ Case No. _____
                                     Same Defendant _____ New Defendant _____
                                     Magistrate Judge Case Number __04-MJ-00281-JLA_____
                                     Search Warrant Case Number _____
                                     R 20/R 40 from District of _____

**Defendant Information:**

**Defendant Name** __Donovan Sorrell_____    Juvenile    ☐ Yes    ☒ No

**Alias Name** _____

**Address** __Kingston, Jamaica_____

**Birth date (Year only):** __1969__  **SSN (last 4 #):** _____  **Sex** __M__  **Race:** __Black_____  **Nationality:** __Jamaican__

**Defense Counsel if known:** __Martin Murphy, Esq._____  **Address:** __150 Federal Street__
                                                                       __Boston, MA  02110__
**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** __David G. Tobin_____  **Bar Number if applicable** _____

**Interpreter:** ☐ Yes ☒ No    **List language and/or dialect:** _____

**Matter to be SEALED:**    ☐ Yes    ☒ No

       ☐ **Warrant Requested**    ☐ **Regular Process**    ☒ **In Custody**

**Location Status:**

**Arrest Date:** __November 23, 2004_____

☒ **Already in Federal Custody as** __of November 23, 2004__  **in** __Boston, MA_____.
☐ **Already in State Custody** _____  ☐ **Serving Sentence**  ☐ **Awaiting Trial**
☐ **On Pretrial Release:**  **Ordered by** _____  **on** _____

**Charging Document:**  ☒ **Complaint**  ☐ **Information**  ☐ **Indictment**

**Total # of Counts:**  ☐ **Petty** _____  ☐ **Misdemeanor** _____  ☒ **Felony** __1__

                    **Continue on Page 2 for Entry of U.S.C. Citations**

☐     I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
      accurately set forth above.

**Date:** 11/30/04        **Signature of AUSA:** _David G. Tobin_

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy clerk):** _____

**Name of Defendant**    Donovan Sorrell _____

### U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 21 U.S.C. § 841 (a)(1) | Possession of Cocaine w/ Intent to Distribute | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:**